1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11   RALPH M. OROSCO,                    Case No. EDCV 18-00669-AS

12                    Plaintiff,

13        v.                             **MEMORANDUM OPINION AND**

14   ANDREW M. SAUL, Commissioner        **ORDER OF REMAND**
     of Social Security,[1]
15
                      Defendant.
16

17

18        Pursuant to Sentence Four of 42 U.S.C. § 405(g), IT IS HEREBY

     ORDERED that this matter be remanded for further administrative
19
     action consistent with this Opinion.
20

21                        **I.   PROCEEDINGS**
22

23
          On April 2, 2018, Ralph M. Orosco ("Plaintiff"), represented
24
     by counsel, filed a Complaint seeking review of the denial of his
25

26   _____
          [1]    Andrew M. Saul is now the Commissioner of the Social
27   Security Administration and is substituted for Acting Commissioner
     Nancy A. Berryhill in this case.  See Fed. R. Civ. P. 25(d).
28

application for supplemental social security benefits. (Dkt. No. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 11, 12). On August 27, 2018, Defendant filed an Answer along with the Administrative Record ("AR"). (Dkt. Nos. 15-16). On February 26, 2019, the parties filed a Joint Submission ("Joint Stip."), setting forth their respective positions regarding Plaintiff's sole claim. (Dkt. No. 26).

## II. BACKGROUND AND SUMMARY OF THE ADMINISTRATIVE RECORD

On March 21, 2014, Plaintiff, formerly employed as a landscape laborer (see AR 51), filed an application for Supplemental Security Income ("SSI"), pursuant to Titles II and XVI of the Social Security Act. (See AR 185-190). The Commissioner denied Plaintiff's application initially and on reconsideration. (See AR 111-124). On October 28, 2016, Administrative Law Judge Norman L. Bennett, ("ALJ"), held a hearing at which Plaintiff, represented by counsel, and Bernard Preston, a vocational expert, testified. (See AR 45-66).

On December 7, 2016, the ALJ denied Plaintiff's SSI application. (See AR 23-44). Applying the five-step sequential process, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since March 21, 2014, the application filing date. (See AR 29). At step two, the ALJ found that Plaintiff's degenerative disc disease of the lumbar spine, degenerative joint disease of the right knee, hepatitis C,

hypertension, history of stroke with residual right arm and leg weakness, and bipolar disorder were severe impairments. (See AR 29-30).[2] At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the Listings enumerated in the regulations. (See AR 30-32).[3]

The ALJ then assessed Plaintiff's residual functional capacity ("RFC")[4] (see AR 32-38) and concluded that he can perform light work, as defined in 20 C.F.R. §§ 416.967(b),[5] with the following

---

[2] The ALJ found Plaintiff's other impairments, specifically, emphysema, hearing loss in his left ear, neck pain, and polysubstance dependence, were non-severe. (See AR 30).

[3] The ALJ considered whether Plaintiff's medically determinable physical impairments, singly and in combination, met or medically equaled the requirements of Listings 1.02 (major dysfunction of a joint(s)), 1.04 (disorders of the spine), 5.05 (hepatic encephalopathy), and 11.04 (vascular insult to the brain). (See AR 31). The ALJ also considered whether Plaintiff's medically determinable mental impairment met or medically equaled the requirements of Listing 12.04 (depressive, bipolar and related disorders). (See AR 31).

[4] The RFC is what a claimant can still do despite existing exertional and non-exertional limitations. See 20 C.F.R. § 416.945(a)(1).

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine

3

limitations: lifting and carrying 20 pounds occasionally and 10 pounds frequently; standing and/or walking up to six hours out of an eight-hour day; sitting up to six hours out of an eight-hour day; frequent postural activities except occasional kneeling; simple, repetitive tasks; and occasional contact with supervisors, coworkers, and the general public. (See AR 32). At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (See AR 38). At step five, the ALJ determined, based on Plaintiff's RFC, age, education, and work experience that Plaintiff could perform jobs that exist in significant numbers in the national economy, including cleaner, garment sorter, and inspector. (See AR 38-39). Accordingly, the ALJ found that Plaintiff was not under a disability as defined by the Social Security Act since March 21, 2014, the SSI application filing date. (See AR 39).

The Appeals Council denied Plaintiff's request for review on January 18, 2018. (See AR 1-6). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. 42 U.S.C. §§ 405(g), 1383(c).

## III.   STANDARD OF REVIEW

This Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial

_____

dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b).

4

evidence; and (2) the Commissioner used proper legal standards. 42 U.S.C § 405(g); see Carmickle v. Comm'r, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007). "Substantial evidence is more than a scintilla, but less than a preponderance." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)(citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is relevant evidence "which a reasonable person might accept as adequate to support a conclusion." Hoopai, supra; Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001)(citation omitted); see Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(inferences "reasonably drawn from the record" can constitute substantial evidence).

This Court "may not affirm [the Commissioner's] decision simply by isolating a specific quantum of support evidence, but must also consider evidence that detracts from [the Commissioner's] conclusion." Ray v. Bowen, 813 F.2d 914, 915 (9th Cir. 1987)(citation and internal quotation marks omitted). However, the Court cannot disturb findings supported by substantial evidence, even though there may exist other evidence supporting Plaintiff's claim. See Torske v. Richardson, 484 F.2d 59, 60 (9th Cir. 1973). "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, [a] court

may not substitute its judgment for that of the [Commissioner]." Reddick, 157 F.3d at 720-21 (citation omitted).

## IV. DISCUSSION

Plaintiff's contends that the ALJ failed to provide specific, clear, and convincing reasons for discrediting his testimony. (See Joint Stip. at 4-13). Respondent contends that the ALJ did provide specific, clear, and convincing reasons for discrediting Plaintiff's testimony. (See Joint. Stip. at 13-17).

After consideration of the parties' arguments and the record as a whole, the Court finds that Plaintiff's claim of error warrants remand for further consideration.

**A.    The ALJ Failed to Properly Assess Plaintiff's Testimony.**

**1.    Plaintiff's Testimony**

In a Function Report dated April 24, 2014 (completed by the girlfriend of Plaintiff, who is illiterate [see AR 55]), Plaintiff detailed his abilities and limitations. (See AR 211-17). Plaintiff lived in a home with his family, where his sister primarily took care of him. (AR 211). With respect to employment, Plaintiff attempted to "do labor work" prior to the onset of his symptoms, but he "was not able to keep a job." (AR 212).

Plaintiff had difficulty sleeping, which was affected by his anxiety and insomnia. (AR 212). His sister fed him in the morning and helped prepare meals for him, as Plaintiff did not know how to cook. (See AR 211, 213). His sister additionally performed various household chores and gave his medications to him. (AR 213). Plaintiff's inability to aid in these activities was the result of his back pain and a recent stroke. (AR 214). Plaintiff needed aid in ironing, laundry, cleaning, and going to doctor's appointments. (AR 213). Plaintiff needed someone to accompany him when he did leave the house and had difficulties with social activities because he spent "most of his life . . . in prison,". (215-16). Plaintiff did not like being around others and preferred to only be around his mother and sister. (AR 216). Plaintiff was only able to go out "about every three days," but also did not "come home for days" at a time. (AR 214). When Plaintiff left the house, he rode in a car; he did not know how to drive. (AR 214). Plaintiff had the ability to shave, feed himself, and put on shoes, but needed help changing clothes, taking a bath, and reminders to brush his teeth. (AR 212-13). Plaintiff watched television approximately one hour a day. (AR 215). As for budgeting and finance-related issues, Plaintiff was unable to pay bills, count change, handle a savings account, and use a checkbook and money orders. (AR 214).

Plaintiff had difficulty lifting, walking, stair-climbing, understanding, squatting, sitting, following instructions, kneeling, using hands, standing, talking, completing tasks, getting along with others, reaching, hearing, lifting ten pounds at a time,

and had issues with memory and concentration. (AR 216). Plaintiff could only walk around the house since the stroke affected his ability to walk; he could go from the bedroom to the bathroom, and needed to rest five minutes before resuming walking. (AR 216). Plaintiff had difficulty following written or spoken instructions, and could pay attention for ten minutes. (AR 216). Plaintiff had difficulty getting along with authority figures, but he had never been fired because of an inability to get along with others. (AR 217). Plaintiff did not handle changes in routine or stress well. (AR 217). Plaintiff used "glasses all the time," a "cane sometimes," and a "wheelchair right now ever since [he] had a stroke." (AR 217).

At the hearing on October 28, 2016, Plaintiff testified to his symptoms and limitations. (See AR 49-60). Plaintiff is 52-years-old, five-foot seven-inches tall, weighing 167 pounds and has a seventh-grade education. (AR 50). The last time Plaintiff used any drugs or alcohol was some time in 2014. (AR 60). In September 2014, he performed landscaping work, including "sweeping" and "pick[ing] up papers and trash," wherein he lifted a "rake and a broom" sweeping into a "rubber trashcan." (AR 51-52). However, he was unable to continue due to knee pain, arthritis, and a "disc in the lower back" causing pain. (AR 52). Plaintiff denied receiving any surgery for his knee and received only steroids under the kneecap for treatment. (AR 49). Plaintiff experiences issues with his general health, arthritis, and right elbow. (AR 59). "[B]ending or lifting" his right elbow creates pain and limits him to lifting a half gallon of water or milk. (AR 59). His doctor

told him to "keep [his] pace" because of two ruptured discs. (AR 59). Plaintiff has high blood pressure, which "goes up and down," but has been stable lately due to medication. (AR 54). Plaintiff experiences chest pains because of his high blood pressure, which occurs usually when laying down. (AR 55).

Presently, Plaintiff lives with his daughter who helps him with daily activities and driving (he does not drive himself). (AR 50, 58). Previously, Plaintiff lived with his older sister, who helped take him to "all of [his] doctors' appointments, [made] sure [he] got fed, [and] washed [his] clothes." (AR 57-58). Plaintiff is unable to do any of those things presently, particularly washing clothes, because the pain in his lower back and right knee flares up. (AR 58).

In his daily life, Plaintiff can sleep only about "four hours because . . . [his] back starts shaking." (AR 53). Seeking relief from the pain of laying down, Plaintiff needs to sit for fifteen to twenty minutes after waking up, then get up and walk around for approximately forty-five minutes, which does not "relieve the pain that much," but "help[s] it a little bit." (AR 53). Plaintiff can stand and walk for forty-five minutes to an hour, before needing to rest for two to three hours. (AR 54). Plaintiff can also sit for about an hour, but needs to move around for another forty-five minutes to relieve any stiffness. (AR 60). Plaintiff is unable to write a simple note in English, read a grocery list or something similar, but can write his own name. (AR 55).

Describing his mental health, Plaintiff feels depression that comes and goes. (AR 55-56). He experiences crying spells three to four days out of the week. (AR 56). He previously had issues with nightmares or recalling things from his past. (AR 57). Plaintiff dislikes large groups of people because he gets "claustrophobic" and generally dislikes it. (AR 57). Plaintiff also "very rarely" goes outside because of his depression, and occasionally goes to "the store" with his daughter if asked. (AR 50, 58).

## 2. <u>Legal Authority</u>

When assessing a claimant's credibility regarding subjective pain or intensity of symptoms, the ALJ must engage in a two-step analysis. <u>Trevizo v. Berryhill</u>, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged. <u>Garrison v. Colvin</u>, 759 F.3d 995, 1014 (9th Cir. 2014). "In this analysis, the claimant is <u>not</u> required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." <u>Id.</u> (emphasis in original) (citation omitted). "Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof." <u>Id.</u> (citation omitted).

If the claimant satisfies this first step, the ALJ must evaluate the intensity, persistence, and limiting effects of the

alleged symptoms to determine the extent to which they limit the ability to do work-related activities, taking into account the objective medical evidence and other evidence in the record. If there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony about the severity of his symptoms. Trevizo, supra (citation omitted); see also Smolen, supra, 80 F.3d at 1284 ("[T]he ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so."); Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006)("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."). "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." Garrison, 759 F.3d at 1015 (citation omitted).

In discrediting the claimant's subjective symptom testimony, the ALJ may consider the following:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed

course of treatment; and (3) the claimant's daily
activities.

Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014)(citation
omitted). Inconsistencies between a claimant's testimony and
conduct, or internal contradictions in the claimant's testimony,
also may be relevant. Burrell v. Colvin, 775 F.3d 1133, 1137 (9th
Cir. 2014); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir.
1997). However, it is improper for an ALJ to reject subjective
testimony based "solely" on its inconsistencies with the objective
medical evidence presented. Bray v. Comm'r of Soc. Sec. Admin.,
554 F.3d 1219, 1227 (9th Cir. 2009)(citation omitted).

Further, the ALJ must make a credibility determination with
findings that are "sufficiently specific to permit the court to
conclude that the ALJ did not arbitrarily discredit claimant's
testimony." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir.
2008)(citation omitted); see also Brown-Hunter v. Colvin, 806 F.3d
487, 493 (9th Cir. 2015)("A finding that a claimant's testimony is
not credible must be sufficiently specific to allow a reviewing
court to conclude the adjudicator rejected the claimant's testimony
on permissible grounds and did not arbitrarily discredit a
claimant's testimony regarding pain," citation omitted). Although
an ALJ's interpretation of a claimant's testimony may not be the
only reasonable one, if it is supported by substantial evidence,
"it is not [the court's] role to second-guess it." Rollins v.
Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

### 3.   The ALJ's Assessment of Plaintiff's Testimony

The ALJ addressed Plaintiff's testimony as follows:

The claimant's statements concerning the intensity, persistence and limiting effects of his symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

As mentioned earlier, the record reflects that the claimant was able to engage in work activity as a landscape laborer after his application filing date and through September 2014. (Hearing Testimony). Specifically, the claimant testified that this work activity sweeping and picking up trash (sic). (Hearing Testimony). The claimant (sic) ability to engage in this work activity is inconsistent with his allegations of disabling physical and mental symptoms and limitations.

In addition, despite the claimant's allegations of disabling musculoskeletal symptoms and limitations, the record reflects that the course of treatment prescribed for the claimant has been overall routine and conservative in nature. Specifically, the claimant treatment has consisted primarily of pain medications, epidural steroid injections in the lumbar spine, and cortisone injections in the right knee. (Exhibit B12F/2, 14, 18, and 29). Moreover, the claimant informed his treating physician that this treatment helped to manage and alleviate his pain. (Exhibit B12F/13-15). This evidence is inconsistent with the claimant's alleged severity of his symptoms and limitations.

Additionally, despite the claimant's allegations of other disabling physical symptoms and limitations, the record reflects that the claimant has not received regular and consistent medical treatment for these conditions. This evidence is also inconsistent with the claimant's alleged severity of his symptoms and limitations.

13

Furthermore, despite the claimant's allegations of disabling mental symptoms and limitations, the claimant denied seeing a psychiatrist, being hospitalized for psychiatric treatment, or receiving any psychiatric treatment including medications or psychotherapy. (Exhibit B10F). This evidence is further inconsistent with the claimant's alleged severity of symptoms and limitations.

Moreover, despite the claimant's alleged use of a wheelchair and cane, the medical records do not indicate that the claimant presented for medical treatment using such an assistive device. This evidence is again inconsistent with the claimant's alleged severity of his symptoms and limitations.

Overall, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. Accordingly, these statements have been found to affect the claimant's ability to work only to the extent they can reasonably be accepted as consistent with objective medical and other evidence.

(AR 34-35).[6]

## A. **Work Activity**

The ALJ's discrediting of Plaintiff's testimony based on Plaintiff's work activity through September 2014 (see AR 35) is not a specific, clear, and convincing reason. Where there are "conflicts between [plaintiff's] testimony and his own conduct,"

---

[6] The ALJ found Plaintiff's testimony with regard to difficulty "handling workplace spaces and interacting appropriately with supervisors, coworkers, and the general public" partially credible. (AR 37).

an ALJ may find the plaintiff's testimony not credible. <u>Light</u>, 119 F.3d at 792. Here, there was no inconsistency between Plaintiff's work activity through September 2014 and the alleged disability onset date of January 1, 2014, since the alleged disability onset date was amended at the administrative hearing to September 1, 2014 (<u>see</u> AR 52).

## B. <u>Routine and Conservative Treatment</u>

The ALJ's discrediting of Plaintiff's testimony based on the "overall routine and conservative in nature" treatment of his musculoskeletal symptoms (<u>see</u> AR 35) is not a specific, clear, and convincing reason. <u>See Childress v. Colvin</u>, 2014 WL 4629593, *12 (N.D. Cal. Sept. 16, 2014)("There is no guiding authority on what exactly constitutes 'conservative' or 'routine' treatment."); <u>see also Boitnott v. Colvin</u>, 2016 WL 362348, *4 (S.D. Cal. January 29, 2016)("[t]here was no medical testimony at the hearing or documentation in the medical record that the prescribed medication constituted 'conservative' treatment of [the plaintiff's] conditions," and the ALJ "was not qualified to draw his own inference regarding whether more aggressive courses of treatments were available for Plaintiff's conditions"). Here, the ALJ did not ask Plaintiff at the hearing whether other treatment was available and why he had not obtained more aggressive treatment for his musculoskeletal symptoms.

Moreover, although the ALJ partially discredited Plaintiff's testimony about his musculoskeletal symptoms and limitations

15

because he "informed his treating physician that his treatment helped to manage and alleviate his pain" (AR 35, citing AR 418-420, see Warre v. Comm'r of the SSA, 439 F.3d 1001, 1006 (9th Cir. 2006)("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."); see also Tommasetti, supra, 533 F.3d at 1040 (Where a plaintiff "respond[s] favorable to conservative treatment . . . such a response . . . undermines [their] reports regarding the disabling nature of [their] pain.")), the two Progress Notes cited by the ALJ do not support the ALJ's position. (See AR 418 [On April 5, 2016 Plaintiff reported "9/10 average" pain], 420 [On May 3, 2016, Plaintiff reported "10/10 average" pain accompanied by "70-80%" pain relief that only "lasted a week" from a recent lumbar spine epidural injection]).[7]

---

[7]     Contrary to the ALJ's determination, the record reflects that Plaintiff's pain was not alleviated significantly during the course of his treatment, from June 11, 2014 to August 31, 2016. (See AR 487 [Progress Note dated June 11, 2014, "6/10 average" pain], 484 [Progress Note dated July 14, 2014, "5/10 average" pain], 481 [Progress Note dated August 12, 2014, "4/10 average" pain], 478 [Progress Note dated October 9, 2014, "5/10 average" pain], 475 [Progress Note dated November 7, 2014, "5/10 average" pain], 472 [Progress Note dated December 9, 2014, "8/10 average" pain], 469 [Progress Note dated January 8, 2015, "6/10 average" pain], 466 [Progress Note dated February 5, 2015, "8/10 average" pain], 463 [Progress Note dated March 6, 2015, "8/10 average" pain], 460 [Progress Note dated April 3, 2015, "10/10 average" pain], 457 [Progress Note dated May 3, 2015, "9/10 average" pain], 454 [Progress Note dated June 2, 2015, "10/10 average" pain], 451 [Progress Note dated June 30, 2015, "10/10 average" pain], 448 [Progress Note dated July 28, 2015, "10/10 average" pain], 445 [Progress Note dated August 25, 2015, "9/10 average" pain], 442 [Progress Note dated September 22, 2016, "10/10 average" pain], 439 [Progress Note dated October 20, 2015, "7/10 average" pain], 436 [Progress Note dated November 17, 2015, "10/10 average" pain], 431 [Progress Note dated January 12, 2016, "5/10 average" pain and

## C.    Lack of Treatment for Non-Musculoskeletal Symptoms

The ALJ's discrediting of Plaintiff's testimony based on his lack of treatment for his non-musculoskeletal symptoms, specifically, hepatitis C, hypertension, and history of stroke accompanied by residual right arm and leg weakness symptoms (see AR 35), is a specific, clear, and convincing reason.  See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)(An "unexplained, or inadequately explained, failure to seek treatment" may be a relevant factor in assessing credibility); see also Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005)("Although a lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.").  There is no indication in the record that Plaintiff sought specific treatment for hepatitis C and hypertension.  Moreover, as the ALJ discussed (see AR 33), Plaintiff obtained treatment for his stroke issues during only two emergency room visits (see AR 311-19, 218-89 [April 10, 2014 and May 9, 2014]).

---

"not much pain relief" from first lumbar spine epidural injection], 428 [Progress Note dated February 9, 2016, "10/10 average" pain], 425 [Progress Note dated March 8, 2016, "9/10 average" pain],  415 [Progress Note dated June 3, 2016, "10/10 average" pain], 412 [Progress Note dated July 1, 2016, "10/10 average" pain], 409 [Progress Note dated July 3, 2016, "10/10 average" pain], 406 [Progress Note dated August 31, 2016, "7/10 average" pain]).

**D.    Lack of Treatment for Psychiatric Symptoms**

The ALJ's discrediting of Plaintiff's testimony based on his lack of treatment for his mental symptoms (see AR 35) is a specific, clear, and convincing reason.  See Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995)(absence of medical treatment for claimant's impairment was inconsistent with the claimant's allegations of debilitating pain).  As the ALJ discussed (see AR 35), Plaintiff received only one psychiatric evaluation to treat and assess his mental symptoms (see AR 399-405 [November 4, 2014]).

**E.    Assistive Devices**

The ALJ's discrediting of Plaintiff's testimony based upon the fact that "the medical records do not indicate that the claimant presented for medical treatment using . . . a wheelchair and cane" (AR 35) is not a specific, clear, and convincing reason.  While an ALJ "may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors," Bray, supra, 554 F.3d at 1227, the lack of reference in the record to such assistive devices is not inconsistent with Plaintiff's testimony.

**F.    The ALJ's Error Was Not Harmless**

As discussed above, the ALJ gave three improper reasons (work activity, routine and conservative treatment, and non-presentation of assistive devices) and two proper reasons (lack of treatment

18

for non-musculoskeletal symptoms, and lack of treatment for psychiatric symptoms) for discrediting Plaintiff's testimony. The question is whether the ALJ's error in giving three improper reasons is harmless error.[8] See Tommasetti, supra, 533 F.3d at 1028 (ALJ's decision will not be reversed for harmless error "when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'")(citations omitted); see also Carmickle, supra, 533 F.3d at 1162 ("[T]he relevant inquiry in this context is . . . whether the ALJ's decision remains legally valid, despite such error"). Here, the ALJ properly discredited Plaintiff's symptom testimony regarding his non-musculoskeletal symptoms, but did not provide a specific, clear, and convincing reason for rejecting Plaintiff's testimony as to his musculoskeletal symptoms and limitations, which were a significant part of Plaintiff's treatment and the record as a whole (see AR 52-54, 58-60 [Plaintiff's testimony discussing his musculoskeletal symptoms], 392-96 [Dr. Seung Lim's physical evaluation], 406-489 [Treatment record from Global Pain Care]). Accordingly, the Court has no basis for finding the ALJ's improper reasons for discrediting Plaintiff's testimony to be  harmless error.

---

[8]    The Court notes that neither party discusses the issue of harmless error. (See Joint Stip.)

# IV.   REMAND IS WARRANTED

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion.  <u>Harman v. Apfel</u>, 211 F.3d 1172, 1175-78 (9th Cir. 2000).   Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits.  <u>Id.</u> at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings.").   However, where, as here, the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate.  <u>McLeod v. Astrue</u>, 640 F.3d 881, 888 (9th Cir. 2011); <u>Harman</u>, 211 F.3d at 1179-81.

Since the ALJ failed to properly assess Plaintiff's symptom testimony, remand is appropriate.  Because outstanding issues must be resolved before a determination of disability can be made, and "when the record as a whole creates serious doubt as to whether the [Plaintiff] is, in fact, disabled within the meaning of the Social Security Act," further administrative proceedings would serve a useful purpose and remedy defects. <u>Burrell</u>, <u>supra</u>, 775 F.3d at 1141 (citations omitted).

//

//

//

**ORDER**

     For the foregoing reasons, the decision of the Commissioner is reversed, and the matter is remanded for further proceedings pursuant to Sentence 4 of 42 U.S.C. § 405(g).

     LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:  July 10, 2019

_____/s/_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE